[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10662
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cv-00037-CDL

DOROTHEA L. JOYNER,

Plaintiff - Appellant,

versus

WOODSPRING HOTELS PROPERTY MANAGEMENT LLC,
NATIONWIDE HOTEL MANAGEMENT COMPANY LLC,
f.k.a. Woodspring Hotels Property Management LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 11, 2019)

Before MARTIN, NEWSOM, and HULL, Circuit Judges.

PER CURIAM:

Dorothea Joyner, proceeding pro se, appeals the district court's grant of summary judgment to Nationwide Hotel Management Company LLC (Nationwide) in her action under Title VII alleging a hostile work environment. See 42 U.S.C. § 2000e-2(a)(1). After careful review, we affirm the district court's judgment, though on different grounds than it gave. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

## I.

Joyner began working at a hotel managed by Nationwide in December 2015. At the beginning of her employment, Nationwide provided her with copies of its policies prohibiting sexual harassment. Joyner signed copies to acknowledge receipt.

Joyner rose quickly through the ranks. She became a general manager of the hotel in late July 2016. Shortly after her promotion, a Nationwide employee told Joyner that another general manager, Nelwyn Smith, was spreading rumors about Joyner. Smith told other Nationwide employees that Joyner was promoted because she had an affair with Regional Director of Operations Bill Mark, who supervised the general managers at the hotel where Joyner worked.

2

In January 2017, Mark was reassigned, and Robyn Evans became the new Regional Director of Operations.  In February or March of 2017, Joyner overheard Smith tell Evans that Joyner was promoted because of an affair.  So far as Joyner knows, Evans never repeated the comment to anyone else.

In March 2017, Evans sent Joyner a performance improvement plan, noting several concerns about Joyner's performance.  Joyner admitted some of the concerns were justified.  But she disputed others.  In April 2017, Nationwide fired Joyner based on her performance and insubordination.

Joyner heard the affair rumor repeated at least five times between her promotion and her termination.  She never raised the subject of the rumor with Nationwide management while she was employed there.  She first complained about the rumor in a letter to Nationwide sent one week after her termination.

Joyner, representing herself pro se, sued Nationwide in district court alleging the rumor amounted to sexual harassment that created a hostile work environment in violation of Title VII.  She also asserted state-law claims.  The district court stayed discovery to allow the defendants to depose Joyner.  The court also allowed defendants to file a limited summary judgment motion based solely on her testimony.

After deposing Joyner, Nationwide moved for summary judgment, asserting that the facts taken in the light most favorable to her did not make out a hostile

3

work environment claim. Nationwide also asserted a <u>Faragher</u>-<u>Ellerth</u> defense. This defense shields an employer from Title VII liability for sexual harassment leading to a hostile work environment if the employer "(1) . . . exercised reasonable care to prevent and promptly correct harassing behavior <u>and</u> (2) . . . the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." <u>Frederick v. Sprint/United Mgmt. Co.</u>, 246 F.3d 1305, 1313 (11th Cir. 2001). Joyner opposed summary judgment. She also moved to strike Nationwide's summary judgment brief, which she says did not take the facts in the light most favorable to her.

The district court granted summary judgment and denied the motion to strike. It found Joyner did not show the harassment she experienced was because of her gender, as required to prevail under Title VII. It also determined Nationwide's motion accepted Joyner's version of the facts as true. Because the Title VII claim was the only basis for original jurisdiction, it declined to exercise supplemental jurisdiction over the remaining state-law claims. It dismissed those claims without prejudice to Joyner refiling in state court. Joyner timely appealed.

## II.

We review <u>de novo</u> a grant of summary judgment. <u>Frederick</u>, 246 F.3d at 1311. Summary judgment is appropriate if, taking the facts in the light most favorable to the nonmovant, there are no genuinely disputed issues of material fact

4

and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; see

Celotex Corp. v. Catrett, 477 U.S. 317, 322–24, 106 S. Ct. 2548, 2552–53 (1986).

To prevail on a Title VII hostile work environment claim based on sexual

harassment, the plaintiff must show:

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004).  As noted

above, an employer is not liable under Title VII for sexual harassment leading to a

hostile work environment if the employer can establish a Faragher-Ellerth defense.

See Frederick, 246 F.3d at 1313; see also Baldwin v. Blue Cross/Blue Shield of

Ala., 480 F.3d 1287, 1303 (11th Cir. 2007).[1]  The employer bears the burden of

establishing this defense.  Frederick, 246 F.3d at 1313.  After review, we conclude

Nationwide has established both prongs of the Faragher-Ellerth defense.  Thus,

even assuming Joyner alleged facts sufficient to sustain her Title VII claim,

summary judgment was properly granted.

---

[1]  The Faragher-Ellerth defense does not apply to "tangible" employment actions, such as termination.  See Baldwin, 480 F.3d at 1303.  Joyner does not contend the rumors led to her termination.  She says here, as she said below, that they created a hostile work environment.

To meet the first prong of the Faragher-Ellerth defense, an employer must show it "exercised reasonable care to prevent and promptly correct harassing behavior." Id. We have held that an employer can meet this prong by showing it has suitable policies in place to prevent sexual harassment. See Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1297–98 (11th Cir. 2000); see also Baldwin, 480 F.3d at 1303; Frederick, 246 F.3d at 1313–14.

Here, it is undisputed that Nationwide had policies in place to prevent sexual harassment. The policies prohibit sexual harassment, and they create "reasonable reporting requirements" of the type we have upheld in other cases. Baldwin, 480 F.3d at 1303; see Frederick, 246 F.3d at 1314 (noting that reasonable policies must be "effectively published" and "contain[] reasonable complaint procedures"). Nationwide required employees to report harassment to management, and it also offered an anonymous complaint procedure. Joyner was aware of the policies. Indeed, in her role as general manager, she sometimes gave them to new hires. This evidence shows Nationwide exercised reasonable care to prevent and correct sexual harassment.

To meet the second prong of the Faragher-Ellerth defense, an employer must show the employee "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." Frederick, 246 F.3d at 1313. As we have said, "[o]ne of the primary obligations that the employee has" when

6

the employer has a reasonable sexual harassment policy "is to take full advantage of the employer's preventative measures." Baldwin, 480 F.3d at 1306–07.

Here, Joyner not only failed to take full advantage, she took no advantage at all. It is undisputed that Joyner never reported the rumors to anyone at Nationwide until after she was terminated. Joyner says in her brief to this Court that she did report the hostile work environment to Evans, but that is belied by the record. In Joyner's deposition, she said she never had any conversation with Evans about the rumor and never reported any sexual harassment to Evans. Further, in a letter she sent to Nationwide just a week after her termination, she said she "never informed" management about the harassment.

The only reasons Joyner gave for her decision not to report the harassment to management do not save her claims. In the same letter in which she acknowledged not informing Nationwide management of the harassment, Joyner said she did so "in an attempt to protect the gathering of evidence." The letter continued on to say "the fear of retribution" drove her decision not to report the rumor. This Court has held that fear of retribution is not a valid reason for failing to use a company's reporting procedures. Baldwin, 480 F.3d at 1307. In her deposition, Joyner said she felt the company would "cover up the issue and put the company's interest first." So far as the record shows, Joyner had no basis for her view in this regard, like a prior cover-up of a sexual harassment claim. And since Joyner never gave

7

Nationwide the chance to remedy the harassment, we cannot tell whether it would have responded as she believed.  If it had, then we might be able to say Nationwide's policies were inadequate on the first prong.  But we cannot excuse her failure to try using what appear to be reasonable policies for preventing sexual harassment.  In these circumstances, Joyner's decision not to report the rumors was not reasonable.  Nationwide thus can prevail on the second prong of its Faragher-Ellerth defense.

 Because Nationwide established a Faragher-Ellerth defense, summary judgment was properly granted.

### III.

 Before concluding, we must address two further contentions Joyner makes on appeal.  First, she argues the district court erred by denying her motion to strike Nationwide's summary judgment motion.  Second, she says the district court erred by declining to exercise supplemental jurisdiction over her state-law claims.  We review both of these district court decisions for abuse of discretion.  See State Exch. Bank v. Hartline, 693 F.2d 1350, 1352 (11th Cir. 1982) (reviewing for abuse of discretion a district court's striking of a party's pleading); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 738 (11th Cir. 2006) (reviewing for abuse of discretion a district court's decision not to exercise supplemental jurisdiction).  And we see no abuse of discretion as to either ruling.

8

The district court declined to strike Nationwide's summary judgment motion because it concluded Nationwide complied with its directive to accept Joyner's facts as true. We see that Nationwide crafted a proper summary judgment motion. Indeed, its recitation of the material facts largely recited Joyner's own testimony. There was no abuse of discretion in denying the motion to strike.

The district court declined to exercise supplemental jurisdiction because it dismissed her only federal claim and because diversity jurisdiction did not exist. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. Parker, 468 F.3d at 743. Here, the Title VII claim was the only federal claim, and Joyner did not allege the citizenship of the parties in her complaint, as would be required to establish diversity jurisdiction over the state-law claims.[2] Thus, the district court was within its discretion to dismiss the claims.

**AFFIRMED.**

---

[2] Of course, because the district court dismissed her complaint without prejudice, Joyner may refile her state-law claims in federal court if she properly alleges diversity jurisdiction. She may also file in state court.

9